Thomas A. Mesereau Jr.,
Mesereau Law Group P.C.
10100 Santa Monica Blvd. Suite 300
Los Angeles, CA 90067
310-651-9960
mesereau@mesereaulaw.com

Jennifer J. Wirsching
Attorney at Law
1935 Alpha Rd, Suite 216
Glendale, CA 91208
424-902-9280
wirschinglaw@outlook.com

Counsel for Artur Ayvazyan

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>ARTUR AYVAZYAN<br>Defendant. | Case No. 20:CR-00579-SVW<br>**RULE 33 MOTION FOR NEW TRIAL IF RULE 29 MOTION (DKT. 686) IS DENIED** |

Defendant, Artur Ayvazyan, moves this Honorable Court for a new trial on all counts pursuant to Federal Rule of Criminal Procedure 33 should the Court deny Defendant's Motion for Acquittal. Defendant also hereby adopts, to the extent applicable to him, any arguments and authorities for granting a new trial made by any of his codefendants.

## I. LEGAL STANDARDS

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "[T]he trial court, on a motion for new trial, has [ ] broad powers to examine errors which may have been committed during the course of the trial," *United States v. Simms*, 508 F. Supp. 1188, 1203 (W.D. La. 1980), "and even a single error during the trial process could, if of sufficient magnitude, warrant a new trial." *Id.* (citations omitted).

Rule 33 also authorizes a new trial where the jury's verdict is against the weight of the evidence. See, e.g., *Tibbs v. Fla.*, 457 U.S. 31, 37-38 (1982). *United States v. Robertson*, 110 F.3d 1113, 1118-20 (5th Cir. 1997); *Simms*, 508 F. Supp. at 1202. "Clearly, the court must proceed with great caution in examining [this type of] motion for new trial; but to ensure that justice is done, courts are extended the broadest possible inquiry …." *Simms*, 508 F. Supp. at 1202 (citations omitted). "Under its broad power, the court may weigh the evidence and consider the credibility of the witnesses." *Id.* (citation omitted). "This power is so encompassing that some courts even go so far as to say that the trial court sits, in effect, as a 13th juror to protect the interests of justice." *Id.* (citations omitted); *Robertson*, 110 F.3d at 1118, 1120 (granting new trial: " the

evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand.”).

Here, a new trial is warranted as the weight of the evidence was clearly towards acquittal.

## II. THE JURY’S VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE

The government relied at trial primarily upon evidence which was applicable to the guilt of Tamara Dadyan. Artur Ayvazyan testified, providing direct evidence of his innocence. The weight of the evidence at trial was contrary to the jury’s verdict. The weight of the evidence at trial showed that Artur Ayvazyan did not commit bank or wire fraud, did not commit aggravated identity theft, did not commit money laundering, did not conspire to do so, and did not aid or abet others in doing so.

### 1. <u>Government Exhibits from Weddington were the Sole Property of Tamara Dadyan</u>

The evidence produced at trial clearly weighed towards acquittal of Artur Ayvazyan. Artur Ayvazyan was the victim of a “guilt-by-association” verdict. The government relied at trial largely on evidence which only applied to Tamara Dadyan, not Artur Ayvazyan. The evidence produced at trial found at the

Weddington residence all belonged to Tammy Dadyan (who had already plead guilty to conspiracy, bank and wire fraud, aggravated identity theft, and money laundering.) Government exhibit 57 detailing the documents and checks found at the Weddington residence were all found in Tammy Dadyan's private office.

Q Where does your wife operate that business?
A She works from home, sir. She has a home office.
Q And you have heard references to searches of the
home office in your house. Is that her office?
A Yes, sir.
Q Is that your office?
A No, sir. I don't have an office.
TR 87, June 23, 2021 AM

The documents found in Tamara Dadyan's office were in her handwriting.

Q Now, first let me ask you this. Do you -- have you
seen your wife's handwriting?
A We have been married for 16 years. I have seen her
handwriting.
Q Can you recognize her handwriting?
A Yes, sir.
Q Showing you this exhibit that is in evidence, 57B,

page 3 of 8. Do you see handwriting on that document?
A Yes, sir.
Q And the document says, "Currently has personal and business need to add this new business address" -- or access and some other language. Whose handwriting is that?
A That is Tammy's handwriting.
Q Is that your handwriting?
A No, sir.
TR 90, June 23, 2021 AM (See also TR 91 – 95, 98-101 witness testimony that the writings were Tamara Dadyan's)

The checks found in Tamara Dadyan's office were her checks.

Q Please look at each of these six checks and see if you recognize them.
A It is Tamara Dadyan, my wife's checks.
Q Are any of these your checks?
A No, sir.
Q Moving along with the same exhibit. Do you see these checks?
A Yes.
Q Do any of these checks belong to you?
A No, sir.
Q Moving along, same exhibit in evidence. Do you see these, what appear to be copies of checks?
A I do.
Q Do you recognize anyone named in those checks

A I don't.
Q This is in the same exhibit in evidence. Do you see these documents?
A Yes, sir.
Q Did you recognize anyone mentioned on these checks?
A No, sir.

TR 95, June 23, 2021 AM (See also additional witness identification of Tamara Dadyan's checks at TR 96)

2. The Evidence Showed Artur Ayvazyan did not Know Tamara Dadyan Made False Statements when Filing Loan Applications for Allstate Towing and Transport

The weight of the evidence showed that Artur Ayvazyan was unaware Tamara Dadyan had used false information when applying for Allstate Towing and Transport Loans. Thus, the weight of the evidence showed he did not commit bank or wire fraud, nor conspire or aid/abet another to do so.

A No, sir. This time when my company was hit big with no business, and PPP announcements news, everything was on TV, on the radio. So I told Tammy, hey, do you think my company will qualify because I am really in need right now. She says, yes, I'll take care of it. And --

…

And I said okay. She asked to see my 1099's from 2019. And she asked a copy of my driver's license and a voided

check, which I provided, and that is it. Nothing else.

Q Did you ever review any PPP loan application?

A No, sir.

Q Did anyone ever present you with one?

A No, sir.

Q Did you ever review the rules or regulations or laws that apply to the Small Business Administration?

A No, sir.

Q Did you submit that loan application?

A No, sir. I was told I qualified due to the fact that I made certain amount of money in 2019, and the loss that I have done in 2020, that automatically qualifies me, and that is what I was told.

Q Told by who?

A My wife, Tammy.

Q Who filled out the loan application?

A She did.

Q Who submitted the loan application?

A She did.

TR 108-109, June 23, 2021 AM

3. <u>The Evidence Showed Artur Ayvazyan did not Know Anna Dzukaeva was a Real Person</u>

A photograph of Anna Dzukeava's name and date of birth were found on Artur Ayvazyan's phone – but he had no idea the information was there. The weight of the evidence showed that Artur Ayvazyan did not commit aggravated identity theft.

Q Okay. Now, in this trial, it has come to the attention of everyone that some what appear to be synthetic ID's, fake ID's, driver's licenses, whatever, were found on your phone?

A Right.

Q Did you put those on your phone?

A No, sir. I don't even know the whereabouts until I got charged and I went through the phone and I saw all that stuff and I erased it right away.

Q Do you know who put that information on your phone?

A Most likely my wife.

Q You did not do it?

A No, sir.

Q Did you invent any of those fake ID's or manufacture them at any point?

A No, sir.

TR 104 – 105, June 23, 2021 A.M.

The weight of the evidence clearly shows that Artur Ayvazyan was unaware Anna Dzukaeva was a real person. "Q do you know the name Anna Dzukaeva?" Artur Ayvazyan testified "A No, sir. Not until I was charged with her identify theft."

TR 115, 116 June 23, 2021 A.M.

4. The Evidence Showed Artur Ayvazyan did not Launder Money

The evidence showed Artur Ayvazyan repaid a loan from his brother with PPP funds he believed he had lawfully received. The evidence showed he did not attempt to conceal the source of funds. He used his own bank account, in his business name.

Q And was that the money you talked about earlier when he helped you with your sea food business?

A I mean, you know, throughout the years it accumulated and Tammy told me that, hey, Richard is buying a house. Do you think you could pay back the loan that, you know, all these years that you have had towards him.

I said sure. So I reached out and I told him, hey, I have some money saved. I didn't tell him I got a loan. I said I got money saved and I want to help you out in your time of need and pay back the loan that I owe you.

Q What accounts were those PPP funds put into?

A One of them, the very first one was into my US bank account. And then I moved money from there to my corporation account. And the reason I did that is for tax purposes.

TR 111 – 112, June 23, 2021 A.M.

Q Did you think you were doing anything wrong when you tried to pay your brother back?

A No. No. I mean, I was explain that it was to pay off debt -- and back debt or just stuff for the business. And since he invested in my business throughout the years, that is when I paid him back. I didn't know I was doing something wrong.

TR 112-113, June 23, 2021 AM.

## III. CONCLUSION

The government relied at trial primarily upon evidence which was applicable to the guilt of Tamara Dadyan. Artur Ayvazyan testified, providing direct evidence of his innocence. The weight of the evidence at trial was contrary

to the jury's verdict. For the foregoing reasons, Artur Ayvazyan should be granted a new trial should his Motion for Judgement of Acquittal be denied.

Dated: July 12, 2021     Respectfully submitted,

*/s/Jennifer J. Wirsching*
Jennifer J. Wirsching
Attorney for Artur Ayvazyan