TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
SCOTT PAETTY (Cal. Bar No. 274719)
CATHERINE AHN (Cal. Bar No. 248286)
BRIAN FAERSTEIN (Cal. Bar No. 274850)
Assistant United States Attorneys
Major Frauds/Environmental and Community Safety Crimes Sections
    1100/1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6527/2424/3819
    Facsimile: (213) 894-6269/0141
    E-mail:   Scott.Paetty@usdoj.gov
              Catherine.S.Ahn@usdoj.gov
              Brian.Faerstein@usdoj.gov

JOSEPH S. BEEMSTERBOER
Acting Chief, Fraud Section
Criminal Division, U.S. Department of Justice
CHRISTOPHER FENTON
Trial Attorney, Fraud Section
Criminal Division, U.S. Department of Justice
    1400 New York Avenue NW, 3rd Floor
    Washington, DC 20530
    Telephone: (202) 320-0539
    Facsimile: (202) 514-0152
    E-mail:   Christopher.Fenton@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:20-cr-579(A)-SVW-4 |
| Plaintiff, | GOVERNMENT'S OBJECTION TO THE PRESENTENCE INVESTIGATION REPORT FOR ARTUR AYVAZYAN |
| v. | |
| ARTUR AYVAZYAN, | Sentencing: November 15, 2021 |
| Defendant. | Time:     11:00 a.m.<br>Location: Courtroom of the<br>          Hon. Stephen V. Wilson |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California, Assistant United States Attorneys Catherine Ahn, Scott Paetty, and Brian Faerstein, and Department of Justice Trial Attorney Christopher Fenton, hereby files its initial response, pursuant to Federal Rule of Criminal Procedure 32(f), to the Presentence Investigation Report ("PSR"), prepared by the United States Probation and Pretrial Services Office ("Probation"), for defendant ARTUR AYVAYZAN ("defendant") (ECF 994).

The government concurs with the United States Probation Office's ("USPO's") calculation of defendant's criminal history category as I, but respectfully submits that the PSR should be amended to include the following enhancement necessary to reflect the scope of defendant's crimes and conduct for which he was convicted: a two-level victim-related adjustment based on the fact that many of the victims were vulnerable and could not protect against defendant and his co-conspirators' use of their names, in accordance with U.S.S.G. § 3A1.1(b)(1). This would result in a total offense level of 37, which yields an advisory Guidelines sentencing range of 210 to 262 months, plus the mandatory consecutive 24 month sentence required for his conviction for count 24 (violating 18 U.S.C. § 1028(A)(a)(1)).

**The PSR Should Apply a Two-Level Victim-related Adjustment**

The government recommends that defendant's offense level be increased by two because he "knew or should have known that a victim of the offense was a vulnerable victim." U.S.S.G. § 3A1.1(b)(1). As discussed in detail in the Government's Response to the Presentence Investigation Report for Tamara Dadyan (ECF 1001 at 3-11), the evidence found at defendant's Weddington residence and evidence found

on his phone, as well as his wife and co-defendant Tamara Dadyan's phone, show that he and his co-conspirators deliberately targeted individuals who were vulnerable to their information being exploited for use in the fraud.  This included foreign exchange students who had left the United States years before COVID-19 and were therefore unable to protect their identities from exploitation, as well as the deceased.

This enhancement applies to individuals that are "unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1(b)(1) App. Note 2.  The purpose of the adjustment is to punish and deter criminals like defendant from victimizing those who cannot protect themselves:

> The "vulnerable victim" sentencing enhancement is intended to reflect the fact that some potential crime victims have a lower than average ability to protect themselves from the criminal.  Because criminals incur reduced risks and costs in victimizing such people, a higher than average punishment is necessary to deter the crimes against them. . . . Defrauders who direct their activities not against banks, insurance companies, or large investors, but instead against people [with] . . . mental or educational deficiencies, . . . do not need to take as many precautions against the discovery of their scheme by the intended victims and in any event are less likely to be prosecuted, because the victims are less  likely to know that they have been defrauded or if they know to have the know-how and initiative required to press a criminal complaint or bring a civil suit.

United States v. Etoty, 679 F.3d 292, 296 (2012) (quoting United States v. Grimes, 173 F.3d 634, 637 (7th Cir.1999)).

The number of J-1 visa-related documents found at the Weddington residence shows that defendant and his co-conspirators deliberately targeted foreign visitors who, once they left the United States, would have little to no capacity to identify and protect their name

3

from use in a U.S. government supported disaster relief loan program. In <u>United States v. Cuellar</u>, 165 F.3d 918 (9th Cir. 1998) (unpublished), the Court affirmed the district court's application of a two-level "vulnerable victim" enhancement where defendant used the identity of a deceased individual to fraudulently obtain a credit card in the deceased's name. "In determining whether a victim is 'particularly susceptible' within the meaning of section 3A1.1(b), a sentencing court must consider the characteristics of the defendant's chosen victim, the victim's reaction to the criminal conduct, the circumstances surrounding the criminal act, and whether the defendant could reasonably have anticipated the victim's reaction." <u>Id.</u> at 918 (citing <u>United States v. Peters</u>, 962 F.2d 1410, 1417 (9th Cir.1992)).

In the instant case, the foreign exchange students targeted by defendant and his coconspirators were particularly susceptible to the fraudulent use of their identities. They had prior legal status in the United States, with valid identification documents and activity. However, these victims had departed years prior to the onset of COVID-19 to return to their countries of origin, with that time and distance making it particularly difficult to detect and address the theft and use of their names in a crisis-induced federal loan program. Given the length of time since the victims were in the U.S. and their immigrant status, defendant could have anticipated their reasonably reaction to the use of their identities – or, in this case, the lack thereof. The two-level enhancement should be applied.

**Corrections and Clarifications**

The government provides the following corrections to the PSR:

- In paragraph 6, the description of Count 24 should be amended to state that, "A. Ayvazyan and co-defendant Tamara

4

        Dadyan (T. Dadyan), each aiding and abetting the other, <u>knowingly transferred, possessed, and used, and willfully caused to be transferred, possessed, and used</u>, without lawful authority means of identification . . ." (underline added to emphasize revision).

- On page 2 under "release status" and in paragraph 9 under "Adjustment under Pretrial Supervision," the description of defendant's terms of pretrial release should be revised to reflect that defendant's $100,000 bond, which was initially supported by signature bonds of $50,000 each provided by Lilit Malyan and Greta Akopyan, was replaced by the deeding of property located on Lemac Street in Van Nuys, California by Abraham Tatoyan.  (<u>See</u> ECF 5, 112.)

- Paragraph 2 should be amended to reflect that Artur Ayvazyan was found guilty by jury trial on June 25, 2021, not June 28, 2021.  Similarly, paragraphs 11 and 18 under the section titled "Status of Co-Defendants" should be corrected to state that co-defendants Richard Ayvazyan and Vahe Dadyan were found guilty by jury trial on June 25, 2021, not June 28, 2021.

- Paragraph 17 under the section titled "Status of Co-Defendants" should be revised to reflect that codefendant Edvard Paronyan was sentenced to 30 months in prison on September 27, 2021.

- In footnote 2 appended to paragraph 29, the last sentence should be revised to read, "On May 12, 2020, T. Dadyan texted R. Ayvazyan that they 'need to do the max' now as

- the market was going to crash" (underline added to emphasize revision, removing the word "stock").
- In the discussion of the offense conduct, the description of the defendant's and his co-conspirator's submission of applications should generally be amended to state that defendant his co-conspirators submitted and caused to be submitted the referenced applications (underline added to emphasize revision).
- In paragraph 94, the paragraph should be amended to state "As established at trial and through additional documentation, A. Ayvazyan and the codefendants submitted loans in the amount of $21,911,962.20 and obtained 18,016,141.26."  (underline added to emphasize revision)

Dated: October 7, 2021          Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

    /s/
CATHERINE AHN
SCOTT PAETTY
BRIAN FAERSTEIN
Assistant United States Attorneys
CHRISTOPHER FENTON
Department of Justice Trial Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA