UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

Case No.   2:20-cr-00579-SVW                                              Date: 1/6/2022

Present: The Honorable:   **STEPHEN V. WILSON, U.S. DISTRICT JUDGE**

Interpreter   N/A

| Paul M. Cruz | N/A | N/A |
|---|---|---|
| *Deputy Clerk* | *Court Reporter / Recorder* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s) | Present | Cust | Bond | Attorneys for Defendants: | Present | App | Ret |
|---|---|---|---|---|---|---|---|
| Vahe Dadyan | | | X | N/A | | | |
| Artur Ayvazyan | | | X | N/A | | | |
| Tamara Dadyan | | | X | N/A | | | |

**Proceedings:   ORDER DENYING APPLICATIONS TO CONTINUE THE SURRENDER DATE OR FOR BOND PENDING APPEAL [1213], [1216], [1217], [1226], [1228]**

Before the Court are applications filed by Tamara Dadyan, Artur Ayvazyan, and Vahe Dadyan to either continue their surrender dates or to grant bond pending appeal. ECF Nos. 1213, 1216, 1217, 1226, 1228. For the reasons below, the applications are DENIED.

**I.    Background**

This Court sentenced Defendants Tamara Dadyan, Artur Ayvazyan, and Vahe Dadyan for their roles in a conspiracy to defraud the federal government out of millions of dollars in pandemic relief funds from the Paycheck Protection Program ("PPP") and Economic Injury Disaster Loan Program ("EIDL"). Defendant Tamara Dadyan pled guilty, while Defendants Vahe Dadyan and Artur Ayvazyan were convicted at trial.[1]

The Court sentenced Vahe Dadyan on October 18, 2021, imposing a term of imprisonment of one year and one day and setting a surrender date of January 10, 2022. Mins. of Sent'g, ECF No. 1076. Next, on November 15, 2021, the Court sentenced Artur Ayvazyan to a term of five years and set a surrender date of January 3, 2022. Mins. of Sent'g, ECF No. 1197. Finally, on December 6, 2021, the Court sentenced Tamara Dadyan, imposing a prison term of ten and a half years and setting a surrender date of January 5, 2022. Mins. of Sent'g, ECF No. 1202.

Defendants filed the instant applications, seeking either a continuance of their surrender dates until March or, alternatively, bond while they each pursued an appeal.

---

[1] Tamara Dadyan later sought to withdraw her guilty plea, which this Court denied for the reasons stated in its order. ECF No. 1193.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

II. **Continuance of Surrender Date**

Defendants' requests to continue their surrender dates are denied, largely for the reasons stated in the opposition papers filed by the government. *See* ECF Nos. 1225, 1229.

First, Vahe Dadyan requests a continuance so that he may undergo a procedure to remove kidney stones. Ex Parte App. for Bond Pending Appeal 2-3, ECF No. 1213 ("V.D. EPA"). The Court already granted a significant extension of the surrender date at Vahe Dadyan's sentencing, pushing his surrender date back from 20 days after sentencing to nearly three months later. And moreover, the Bureau of Prisons ("BOP") has medical facilities and routinely provides medical services. Defendant's generic assertion that the pandemic is "not making things easier for BOP," *id.* at 2, does not give any substantive reason to doubt that his medical issues, including his kidney stones, can be addressed while in BOP custody.

Second, Artur Ayvazyan and Tamara Dadyan's requests for a continuance are both premised on the need for more time to attend to family affairs, specifically, so that they can (1) consult with doctors regarding a diagnosis and treatment plan for a potential medical issue with their minor daughter, and (2) arrange care for Artur Ayvazyan's disabled mother. Mot. to Continue Surrender Date 1-2, ECF No. 1216; Req. to Continue Surrender Date 1-3, ECF No. 1217. However, Defendants have had more than enough time to make family arrangements. The Court has already permitted both to remain on bond for a lengthy period after issuing its sentence – Tamara Dadyan was given a month before her self-surrender, while Artur Ayvazyan was given 1.5 months.

And further, Defendants have had an even longer period to make such arrangements if one considers the amount of time that has elapsed since their convictions, at which point it was clear that some sort of custodial sentence was likely. Tamara pled guilty in June 2021, and Artur was found guilty at trial a few weeks later. This Court granted multiple continuances of the sentencing date, so that Artur was not sentenced until November 15, 2021 and Tamara on December 6, 2021. Both Defendants remained free on bond throughout that period. In total, Defendants have had six months to make any necessary family arrangements; there is no warrant for any additional time.

III. **Bond Pending Appeal**
    a. **Legal Background**

Title 18 U.S.C. § 3143 creates a presumption against release pending appeal. It provides that a defendant who has been found guilty and sentenced must be detained unless the court finds:

> "(A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
>     (i) reversal,

(ii) an order for a new trial,
(iii) a sentence that does not include a term of imprisonment, or
(iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(1). Thus, the Ninth Circuit has prescribed a four-part test. To grant bail, a court must find:

"(1) that the defendant is not likely to flee or pose a danger to the safety of any other person in the community if released;
(2) that the appeal is not for purpose of delay;
(3) that the appeal raises a substantial question of law or fact; and
(4) that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed."[2]

*United States v. Handy*, 761 F.2d 1279, 1283 (9th Cir. 1985) (citations omitted). The phrase "likely to result in" defines the type of question that must be presented, while the term "substantial" defines the level of merit required. *Id.* A "substantial question" of law or fact is one that is "fairly debatable" or "fairly doubtful." *Id.* It must be "of more substance" than a question that is merely non-frivolous. *Id.*

### b. Application

Here, even assuming that Defendants could satisfy the first two prongs of the *Handy* test, the Court concludes that their appeals either fail to raise substantial questions of law or fact or – to the extent they do raise such substantial questions – favorable decision would still not be likely to result in reversal, a new trial, or a qualifying sentence under 18 U.S.C. § 3143(b)(1)(B)(iii) or (iv). *See Handy*, 761 F.2d at 1283.

### 1. Vahe Dadyan

Defendant Vahe Dadyan argues that his appeal raises a substantial question of law likely to result in reversal because he contests the sentencing enhancement the Court applied for the amount of loss under U.S.S.G. § 2B1.1(b)(1). V.D. EPA 4-5.

Defendant seems to blur two different points. First, Defendant points out that the Court applied a +20 level enhancement to Vahe Dadyan, corresponding to a loss of between $9.5 and $25 million caused by the conspiracy as a whole, but in sentencing later defendants, including Artur and Richard Ayvazyan, Marietta Terabelian, and Tamara Dadyan, the Court applied a +16, which reflects a losses caused by the conspiracy as a whole of between $1.5 and $3.5 million. Second, Defendant seizes on a statement by the Court at a later sentencing hearing for other defendants. There, counsel for the government sought a

---

[2] *Handy* was decided prior to addition of 18 U.S.C. § 3143(b)(1)(B)(iii) and (iv), which permit release when there is a substantial question likely to result in a sentence excluding a term of imprisonment or for a term less than the amount of time served plus expected duration of the appeal.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

higher loss enhancement by pointing out that in Vahe Dadyan's earlier sentencing, "the Court found that the loss amount that should apply is the entire amount of the conspiracy," and the Court responded, "I probably made a mistake." Hr'g Tr. 16:16-20, Nov. 15, 2021, ECF No. 1184. Thus, in Defendant's view, the Court's mistake in calculating the guidelines is an issue that warrants release pending appeal.

However, even assuming that this constitutes a "substantial question" of fact or law, it is not one that, if decided in Vahe Dadyan's favor, would likely result in reversal, new trial, or a qualifying sentence reduction. *See Handy*, 761 F.2d at 1283. First, if the Court erred in determining the enhancement for amount of loss, that error would only affect sentencing and would not present grounds for reversal of Defendant's conviction or a new trial. *See United States v. Heine*, 2018 WL 3745813, *7 (D. Or. Aug. 7, 2018).

Nor would such an error likely result in a sentence that does not include a term of imprisonment or a reduced term less than the expected duration of the appeal process.[3] The Court's sentence of one year and one day was drastically below the guidelines range of 87 to 108 months. In Defendant's sentencing memorandum, he contended that his "role was limited to one loan in the amount of $157,500.00." Sent'g Mem. Re: Vahe Dadyan 10, ECF No. 1020. Even if the Court used that amount, a loss of $157,500 corresponds to a loss enhancement of +10. Given that the base offense level is 7 (and Dadyan falls within Criminal History Category I), the recommended guidelines range would *still* be 24 to 30 months – double the term of imprisonment the Court imposed here.

Thus, even if the Court had calculated the guidelines exactly as Defendant Dadyan wishes, it would still not likely have resulted in any "reduced" sentence compared to the one imposed by this Court, let alone a sentence without any term of imprisonment whatsoever. *See* 18 U.S.C. §§ 3143(b)(1)(B)(iii), (iv); *see also Heine,* 2018 WL 3745813 at *7-8 (holding that fourth *Handy* prong was not satisfied where, "[e]ven if Defendants were to prevail on their loss calculation guidelines argument," it would not lead to any reduced sentence because the Court had imposed a significantly below-guidelines sentence in the first place).

Accordingly, Defendant Vahe Dadyan does not present a sufficient basis for bond pending appeal and his application is denied.

2. **Artur Ayvazyan**

Artur Ayvazyan presents four issues that he contends are "fairly debatable" questions that, if decided favorably, would likely result in reversal: (1) the Court's error in failing to instruct the jury on multiple conspiracies; (2) the insufficient evidence to support an aggravated identity theft conviction; (3) the Court's error in failing to apply a mitigating role sentencing adjustment; and (4) the Court's error in failing to permit him to be heard at sentencing. Ex Parte App. for Bond Pending Appeal 5-12, ECF No. 1226 (A.A. EPA). The first two issues relate to the jury's conviction of Defendant Ayvazyan at trial, but neither presents a "substantial" question of law or fact.  The latter two issues relate to sentencing, but do

---

[3] Since Vahe Dadyan has not yet served any time, the relevant time period under 18 U.S.C. § 3143(b)(1)(B)(iv) is the expected duration of the appeal process. The same is true of Defendants Artur Ayvazyan and Tamara Dadyan.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

not present a question "likely to result in" a reduced sentence that meets 18 U.S.C. § 3143(b)(1)(B)'s criteria.

*First*, the Court already extensively analyzed the issue of a multiple conspiracies instruction in one of its previous orders. Order 9-17, ECF No. 664. While the Court will not repeat that lengthy analysis here, the Court began by noting that "subagreements or subgroups by themselves do not amount to separate conspiracies." *Id.* at 10 (citing *United States v. Singh*, 979 F.3d 697, 722 (9th Cir. 2020); *United States v. Bibbero*, 749 F.2d 581, 587 (9th Cir. 1984); *United States v. Torres*, 869 F.3d 1089, 1102 (9th Cir. 2017); *United States v. Job*, 871 F.3d 852, 868 (9th Cir. 2017); *United States v. Mincoff*, 574 F.3d 1186, 1196 (9th Cir. 2009); *United States v. Fernandez*, 388 F.3d 1199, 1248 n. 34 (9th Cir. 2004)). A multiple conspiracies instruction is only warranted when the conspiracies are "separate from" and "unrelated to" each other. *Id.* at 10 (citing *Job*, 871 F.3d at 868; *Torres*, 869 F.3d at 1101; *Fernandez*, 388 F.3d at 1247).

The Court also noted that "a person 'may become a member of a conspiracy without full knowledge of all the details of the unlawful scheme or the names, identities, or locations of all of the other members.'" *Id.* (citing Ninth Circuit Crim. Model Jury Instructions 8.23 (Conspiracy—Knowledge of and Association with other Coconspirators)). Then, after a detailed examination of the evidence, *see id.* at 11-14, the Court concluded that "no reasonable juror could reasonably find two separate and unrelated conspiracies." *Id.* at 14.

Defendant Ayvazyan argues that the lack of communications between members of the two purported conspiracies presented a sufficient basis for a multiple conspiracies instruction.[4] This is no different than the argument previously advanced. *See id.* at 11. It was unavailing then, and it is unavailing now.

As the Court previously explained, "the overwhelming evidence shows that (1) the two alleged groups had the exact same objective (*i.e.*, obtaining fraudulent PPP and EIDL loans); (2) both alleged groups accomplished that goal using the exact same methods (*i.e.*, the same set of fake and synthetic identities and entities); and (3) all of the defendants – in particular Richard Ayvazyan and Marietta Terabelian – obtained and concealed their benefits through their coconspirators' use of these methods." *Id.* at 14. Thus, even if a member of one alleged group did not communicate with – or even know – all the members of the other group, no reasonable juror could conclude that there were two separate, unrelated conspiracies that were (1) committing the same type of fraud, (2) during the exact same time period, (3) using the same fake and synthetic identities and businesses, (4) to submit fraudulent loan applications from the same addresses, (5) for the benefit of the same individuals. *Id.* at 12-14.

Accordingly, Ayvazyan's multiple conspiracies argument does not present a "substantial" or "fairly debatable" question. *See Handy*, 761 F.2d at 1283.

---

[4] In Ayvazyan's view, one conspiracy consisted of Manuk Grigoryan, Arman Hayrapetyan, Payrur Hayrapetyan, and Edvard Paronyan, while the other consisted of Richard Ayvazyan, Marietta Terabelian, Tamara Dadyan, Artur Ayvazyan, and Vahe Dadyan. AA. EPA at 6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

*Second*, Defendant Ayvazyan's argument that the evidence was insufficient to support a conviction for aggravated identity theft is similarly lacking in merit to present a substantial question. As the Court has previously discussed, the search of Artur Ayvazyan and Tamara Dadyan's home yielded overwhelming evidence of their guilt. *See, e.g.,* Government Trial Ex. ("GEX") 10 at 1-70; GEX 57; *see also* Order Den. New Trial 11-12, ECF No. 875 (discussing evidence against Artur Ayvazyan). The search turned up scores of fake and synthetic identity documents, including images of many such documents on Artur Ayvazyan's phone.

Defendant's argument that this overwhelming evidence is insufficient to support his aggravated identity theft conviction relies on his testimony at trial, in which he denied responsibility for this evidence. A.A. EPA 7-8. Here, like at trial, Ayvazyan lays the blame at the feet of his wife, Tamara Dadyan, claiming that she was responsible for all of the fraudulent identity documents found in their home and even the images of such identity documents found on *his own* phone. *See id.*

This argument is simply frivolous. As this Court previously noted, it is "the exclusive province of the jury to determine the credibility of witnesses." Order Den. New Trial 11 (quotation and citation omitted). The jury clearly found that Artur Ayvazyan's testimony was not credible and that it was not reasonable to believe that he had nothing to do with the fraudulent identities found in his own home and on his own phone. The jury was entitled to make that finding, and there is more than enough evidence to support that finding and the jury's guilty verdict on the aggravated identity theft counts.

*Third*, Defendant Ayvazyan's argument that the Court erred in not applying a mitigating role adjustment at sentencing presents neither a "substantial" question nor one "likely to result in" a reduced sentence that meets 18 U.S.C. § 3143(b)(1)(B)'s requirements. For one, much of Defendant's argument essentially amounts to the fact that he was not a ringleader of the conspiracy. For example, he argues that there was no evidence that he "participated in planning organizing" or "influenced, let alone exercised, decision-making authority" and that, as the Court noted, "he wasn't an architect." A.A. EPA 10. These points speak to why the Court declined to apply an *enhancement* for a leader or manager role in the offense under U.S.S.G. § 3B1.1, but they fall short of presenting grounds for a *reduction* for a mitigating role under U.S.S.G. § 3B1.2. Defendant is not entitled to a mitigating role reduction just because he "wasn't an architect."

Further, as the Court discussed at length in the sentencing hearing, the evidence does not support a mitigating role adjustment. As just mentioned, there is ample evidence of Artur Ayvazyan's involvement in creating the fake and synthetic identities to help operate the scheme, particularly the evidence found on his phone. *See* Hr'g Tr. 5:25-6:12, 12:16-22:11, Nov. 15, 2021, ECF No. 1188. Moreover, the evidence indicated that Defendant also participated in submitting the fraudulent loans – he even wanted to submit *more* loans – and participated in distributing the fraudulent proceeds. *See id.* at 14:20-15:19 (including discussion of GEX 10, which contained a text between Tamara Dadyan and Richard Ayvazyan that Artur wanted to "do" another fraudulent loan with U.S. Bank).

Undoubtedly, Artur Ayvazyan played a lesser role in the conspiracy that Richard Ayvazyan and Tamara Dadyan – and his sentence reflected that, including the fact that the Court did not apply an aggravating role enhancement as it did for Richard and Tamara. But even so, his participation was far

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

from that of a "minimal" or "minor" participant. *See* U.S.S.G. § 3B1.2. Thus, the evidence does not support Defendant's argument for a mitigating role reduction, and it thus does not present a "substantial" or "fairly debatable" question of law or fact.

  Additionally, the mitigating role issue is also not one "likely to result in" a "reduced" sentence to a term of imprisonment less than the expected duration of the appeal process – or one without any term of imprisonment whatsoever. *See* 18 U.S.C. §§ 3143(b)(1)(B)(iii), (iv). Even if the Court applied the maximum possible mitigating role reduction, the offense level would have dropped from 27 to 23, indicating a guidelines range of 46 to 57 months. That range is still significantly above the 36-month sentence the Court imposed.[5] Thus, as discussed with regard to Defendant Vahe Dadyan, *see supra* Section III.b.1, Ayvazyan cannot show that the issue, even if decided favorably, would likely lead to a reduced sentence from the one imposed.

  *Fourth*, Defendant Ayvazyan's final argument also does not present an issue "likely to result" in a sentence without a term of imprisonment or for a term less than the expected duration of the appeal process. *See* 18 U.S.C. §§ 3143(b)(1)(B)(iii), (iv). Defendant submits that he was denied the opportunity to be heard at his sentencing, in violation of Rule 32. A.A. EPA 11-12; *see* Fed. R. Crim. P. 32(i)(4)(A)(ii). Upon a careful review of the transcript of Defendant's sentencing hearing, the Court acknowledges that its colloquies failed to "address the defendant *personally*" to invite him to speak on his own behalf. *See* Fed. R. Crim. P. 32(i)(4)(A)(ii) (emphasis added); *see Green v. United States*, 365 U.S. 301, 305 (1961) (courts should "unambiguously address themselves to the defendant" to offer chance to speak at sentencing). Denial of allocution generally constitutes an error that provides grounds for vacatur of a defendant's sentence and resentencing. *See United States v. Medrano*, 5 F.3d 1214, 1219 (9th Cir. 1993).[6]

  However, even if a defendant can point to an error that will likely require resentencing, that alone is not sufficient to warrant bond pending his appeal. Under § 3143(b), he still must show that the error, once corrected in his favor is "likely to result in" a sentence that either does not include a term of imprisonment or that includes a term that is less than the amount of time the defendant has already served plus the expected duration of the appeal. 18 U.S.C. §§ 3142(b)(1)(B)(iii), (iv).

  When a sentence is vacated and remanded, the resentencing is essentially *de novo*; a district court "is free to consider any matters relevant to sentencing, including those not raised at the first sentencing hearing." *United States v. Audette*, 923 F.3d 1227, 1241-42. Thus, Defendant Ayvazyan's sentence upon correction of his denial of allocution could be lesser – or greater – than the five years originally

---

[5] The Court sentenced Ayvazyan to 36 months on the conspiracy and fraud counts to which the mitigating role adjustment would apply. The adjustment would *not* apply to Ayvazyan's mandatory, consecutive 24-month sentence on the aggravated identity theft count.

[6] The Court notes that, had this error been brought to its attention earlier, it would have vacated and reimposed sentence after permitting Defendant to be heard under its Rule 35 authority, which permits a sentencing court to "correct" a sentence that involves "clear error," such as this plain error denial of allocution. *See* Fed. R. Crim. P. 35(a). However, the Court was *only* permitted to do so within 14 days of announcing the sentence; since this period has elapsed, the Court cannot do so. *See United States v. Barragan-Mendoza*, 174 F.3d 1024, 1027-1030 (9th Cir. 1999) (holding that a court must act to correct sentence within Rule 35's time period, otherwise "the district court *cannot* modify a defendant's sentence").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

imposed. But at minimum, it *must* be at least two years because his conviction on the aggravated identity theft counts *requires* a two-year term of imprisonment. 18 U.S.C. § 1028A. Thus, it is impossible that his appeal could result in a sentence without a term of imprisonment imposed. *See* 18 U.S.C. § 3142(b)(1)(B)(iii).

Further, since Ayvazyan has not yet served any time, release would only be warranted if his appeal were likely to result in a sentence less than the expected duration of that appeal. *See id.* § 3142(b)(1)(B)(iv). Defendant Ayvazyan's application simply concludes that the allocution error is "reversible," but it offers nothing to explain why his resentence upon that error's cure is likely to be less than the expected duration of his appeal. *See* A.A. EPA 12. Thus, he has failed to meet his burden on this point. *See United States v. Koziol*, 2021 WL 2267444, *5 (C.D. Cal. June 2, 2021) (denying bond pending appeal because defendant failed to show that, if resentenced, his sentence would be less than expected appeal duration). Indeed, the Court notes that the Ninth Circuit's median appeal duration is 13 months, far less than the 24 months that is absolute minimum sentence Ayvazyan could receive on resentencing. *See* https://jnet.ao.dcn/resources/data-analysis/caseload-data/federal-court-management-statistics/appeals-dashboard; *see also United States v. Avetisyan*, 2019 WL 3957845, *2 (C.D. Cal. Aug. 22, 2019) (denying bond pending appeal where, even if sentencing issue were resolved in defendants favor, the appeal would likely be resolved in less time than the guidelines range sentence of 24 months).

Thus, for the reasons above, Ayvazyan does not present any issue that justifies bond pending appeal.

### 3. Tamara Dadyan

Defendant Tamara Dadyan presents two issues that purportedly warrant her release pending appeal. First, she argues that the Court erred in denying her motion to withdraw her guilty plea. Ex Parte App. for Bond Pending Appeal 6, ECF No. 1228 ("T.D. EPA"). Second, she argues that she received ineffective assistance of counsel from her former attorney, Fred Minassian, due to a conflict of interest arising from the fact that Mr. Minassian was himself under federal indictment for obstruction of justice in an unrelated case. *Id.* at 7. However, neither argument present a "substantial" or "fairly debatable" question of fact or law. *See* 18 U.S.C. § 3143(b)(1)(B); *Handy*, 761 F.2d at 1283.

Defendant Dadyan's first argument simply rehashes the same contentions she made in her motion to withdraw her guilty plea, which are without merit.[7] The Court extensively analyzed her motion to withdraw her plea in a previous order. *See* Order Den. Def. Mot. to Withdraw Guilty Plea, ECF No. 1193 ("Order Den. Plea Withdrawal"). While the Court will not repeat all of its lengthy analysis here, Dadyan's main argument is once again that she was made to sign a plea agreement with a "false" factual basis that attributed responsibility for all 151 fraudulent loans to her, when she only "did" four loans. *See* T.D. EPA 3-5.

---

[7] Indeed, Defendant Dadyan seems to have simply copied-and-pasted much of her earlier motion to withdraw her plea – including an argument that Mr. Minassian had incorrectly advised her of the sentencing recommendation provided for in the plea agreement, which she later retracted in her reply papers after realizing that it was based on a misunderstanding of texts from Mr. Minassian. *Compare* Mot. to Withdraw 5-8, ECF No. 998, *with* T.D. EPA 2-5; *see also* Reply ISO Mot. to Withdraw 9 n.4, ECF No. 1110.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

As the Court explained in its prior order, this argument is simply without merit because "the factual basis of her plea agreement never says that Dadyan 'did' or personally submitted all 151 loans. Rather, it states that 'Defendant submitted and caused to be submitted and aided and abetted the submission of at least 151 fraudulent PPP and EIDL applications as part of the conspiracy and scheme in which she was a participant.'" Order Den. Plea Withdrawal 9 (citation omitted). And as the evidence overwhelmingly shows, Defendant *did* aid and abet a conspiracy that collectively submitted 151 loan applications. *See id.* at 5-6, 9.

"[W]hat Defendant Dadyan seems unwilling to accept" – and is evidently still unwilling to accept – "is that by pleading guilty to the conspiracy count, she is criminally liable for all of the loss that was reasonably foreseeable as a product of the conspiracy's efforts. Given her extensive, upper-level role in the conspiracy, that includes all 151 loan applications and all of the loss associated with those applications." *Id.* at 10-11 (citing U.S.S.G. § 1B1.3(a)(1)(B); *United States v. Treadwell*, 593 F.3d 990, 1002 (9th Cir. 2010), *overruled on other grounds by United States v. Miller*, 953 F.3d 1095 (9th Cir. 2020)). Defendant Dadyan continues to "resist[] the law of conspiracy itself and the legal effect of [her] actions," *id.* at 11, but that does not amount to a "substantial" question of fact or law raised by her argument. *See* 18 U.S.C. § 3143(b)(1)(B).

Defendant Dadyan's second argument is similarly lacking in merit such as to present a "substantial" question of fact or law. *See id.* A defendant's Sixth Amendment right to effective assistance of counsel includes the right to conflict-free representation, and a court presented with a possible conflict has an affirmative duty to inquire about that conflict. *Garcia v. Bunnell*, 33 F.3d 1193, 1195 (9th Cir. 1994) (citing *Wood v. Georgia*, 450 U.S. 261, 271 (1981)); *United States v. Allen*, 831 F.2d 1487, 1494 (9th Cir. 1987) (citing *Glasser v. United States*, 315 U.S. 60, 72 (1942)). "Even if counsel is subject to an actual conflict of interest, however, the trial court may generally allow the attorney to proceed if the defendant makes a voluntary, knowing, and intelligent waiver." *Garcia*, 33 F.3d at 1195 (citing *Holloway v. Arkansas*, 435 U.S. 475, 483 n. 5 (1978)).

Here, when the Court learned of the possible conflict of interest arising from the unrelated prosecution against Dadyan's counsel, Fred Minassian, the Court conducted a hearing to inquire further. *See Allen*, 831 F.2d at 1494. After detailed questioning of Defendant Dadyan, in which she insisted that she understood the potential conflict and risks and still wished to proceed with Mr. Minassian as her lawyer, the Court concluded that she knowingly, intelligently, and voluntarily waived the conflict. *See Garcia*, 33 F.3d at 1195; Mins. of Hr'g, Jan. 12, 2021, ECF No. 110. Defendant Dadyan's conclusory statement that her waiver "was not a knowing and intelligent, and fully-counseled waiver," without any supporting facts whatsoever, *see* T.D. EPA 7, does nothing to rebut this conclusion and does not present a "substantial" or "fairly debatable" question of law or fact. *See* 18 U.S.C. § 3143(b)(1)(B); *Handy*, 761 F.2d at 1283.

IV. **Conclusion**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES – GENERAL

For the foregoing reasons, the applications filed by Tamara Dadyan, Artur Ayvazyan, and Vahe Dadyan for bond pending appeal or a continuance of their self-surrender dates, ECF Nos. 1213, 1216, 1217, 1226, 1228, are DENIED.

**IT IS SO ORDERED.**

                                                                                                        **:**
                                          **Initials of Deputy Clerk**